IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| B&S MUSIC PROPERTIES, INC., a Tennessee Corporation<br><br>Plaintiff,<br><br>v.<br><br>UMG RECORDINGS, INC., a California Corporation,<br><br>Defendant, | Case No.<br><br>JURY DEMAND |

## COMPLAINT

Plaintiff B&S Properties, Inc. ("B&S" or "Plaintiff"), for its Complaint against Defendant, UMG Recordings, Inc. ("Defendant"), states as follows:

### I. THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff, B&S Music Properties, Inc. is a Tennessee Corporation with a principal place of business at 524 East Iris Drive, Nashville, Tennessee, within this Judicial District. B&S has owned the trademark for and in *East Iris Studios* since 1998.

2. Defendant, UMG Recordings, Inc. is a California Corporation that maintains its principal place of business in Los Angeles, California with an office at 222 2nd Avenue, South Nashville, Tennessee 37201.

3. This Court has subject-matter jurisdiction of this cause pursuant to 28 U.S.C. §§ 1331 and 1338 because it arises under the Lanham Act, 15 U.S.C. §§ 1064, 1120 and 1125(a).

4. This Court has personal jurisdiction over Defendant because it maintains its office in Nashville, Tennessee, conducts business in the State of Tennessee, and has otherwise availed itself of the jurisdiction of this Court pursuant to Tenn. Code Ann. § 20-2-223 by the transaction

of business within the State, and undertaking actions or omissions within the State that have caused injury to B&S.

5. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this judicial district and Defendant is subject to personal jurisdiction within this Judicial District.

## II. THE CONTROVERSY

### Gary Belz / B&S Start *East Iris Studios* in Berry Hill (Nashville), Tennessee

6. Gary Belz, owner of B&S, has a well-established and well-earned reputation as an individual who cares deeply for and has given much to the Nashville music community. Since the early 1990s, Mr. Belz, who is originally from Memphis, Tennessee and his companies have been at the forefront of the evolution of Berry Hill into a haven for Nashville's recording community.

7. In 1995, Gary Belz, along with Allen Sides, founder of the original Ocean Way Studios in Los Angeles, California, converted the 1911 Church of the Advent, a 100-year-old Brownstone church building on Music Row in Nashville, into Ocean Way Nashville. Belz and Sides sold Ocean Way Nashville in 2001 for use by the Mike Curb College of Entertainment & Music Business at Belmont University, which continues today.

8. In 1998, Belz's company, B&S, purchase the original East Iris property where Studio A was established. B&S began using the trademark / service mark for *East Iris Studios* in commerce at that time (the "*East Iris Studios* Mark" or the "Mark"). The Company expanded *East Iris Studios* in 2002 with the renovation of Studio B.

9. Soon thereafter, B&S continued the expansion of *East Iris Studios* with the purchase of the property next door. Belz also purchased the property across the street, which eventually housed both Studio C, a pro-tools production room, and Studio D (with a recording

2

console originally from the House of Blues in Memphis that included a classic API with vintage 550A EQ and 2520 Op Amp).

10. B&S has utilized the *East Iris Studios* Mark, among other marks, in commerce continually from 1998 until the present.

11. B&S has the exclusive right to use the *East Iris Studios* Mark in conjunction with the operation of its studio / recording business at 524 East Iris Drive, Nashville, Tennessee 37204, which has listed *East Iris Studios* as an assumed name for the Company with the Tennessee Secretary of State since 2019.

12. From 1998 through the present, B&S has spent considerable time and resources in developing a first-class recording studio, and the resulting goodwill and value in the Company's *East Iris Studios* Mark grew significantly.

**Defendant Steals Plaintiff's Trademark and Fraudulently Registers Itself with the USPTO as the Owner of the *East Iris Studios* Trademark.**

13. In 2018, Defendant approached Belz and B&S with respect to interest in selling the physical property located at 518 East Iris Drive in conjunction with the proposed sale of six other properties (514, 516, 517 and 520 East Iris Drive and 2800 and 2801 Columbine) (collectively, the "East Iris Property").

14. During the parties' subsequent negotiations, it was made clear by both sides that B&S was not selling its intellectual property or goodwill associated with the East Iris Property, including, without limitation, its exclusive rights in and to the use the names *East Iris Studios* and *House of Blues Studios* and resulting *East Iris Studios* Mark.

15. In fact, Defendant specifically declined to purchase the *East Iris Studios* Mark from B&S at the time of the purchase and represented that Defendant intended to go forward under the name *Berry Hill Studios*.

3

16. Defendant went so far as to request Belz assist Defendant in securing the domain name for *Berry Hill Studios* prior to the 2017 closing for the East Iris Property, which he did.

17. After Defendant's acquisition of the East Iris Property, in 2019, B&S Music Properties, Inc. registered at its new address and under the assumed names *House of Blues Studios* and *East Iris Studios* with the Tennessee Secretary of State.

18. Defendant always knew it did not acquire the Mark in 2018 and otherwise had no legitimate interest in the *East Iris Studios* Mark.

19. In fact, in 2019, Defendant admitted as much when it approached B&S about acquiring the *East Iris Studios* Mark a year after acquiring the East Iris Property.

20. Specifically, Pat Kraus, Senior Vice President of Recording Studios and Archive Services for UMG Recordings, Inc. called Belz of B&S and acknowledged that Defendant did not acquire or otherwise own the *East Iris Studios* Mark.

21. Kraus also acknowledged (contrary to his representations when Defendant purchased the East Iris Property) that Defendant wanted to use Plaintiff's Mark for a new studio at the East Iris Property. At that time, Kraus proposed that the parties enter into a trademark assignment agreement.

22. In furtherance of its efforts to acquire the *East Iris Studios* Mark post-sale, Defendant prepared a 2019 Trademark Assignment Agreement for Plaintiff to transfer the Mark to Defendant and circulated the draft Trademark Assignment Agreement on to Plaintiff for review on October 17, 2019 stating, in part "So appreciate you doing this for us – thank you!" (Defendant's Proposed 2019 Assignment of Trademark Agreement is attached as Exhibit A to this Complaint).

23.     After a brief discussion, however, it was clear to Plaintiff that Defendant did not want to provide any value for the Mark, and Plaintiff declined Defendant's request to enter into the 2019 Trademark Assignment.

24.     The next year, 2020, during the height of the COVID pandemic and suffering from related health issues at the time, Plaintiff inadvertently let its domain name registration for *East Iris Studios* lapse briefly.

25.     Within hours of Plaintiff's inadvertent lapse, Kevin Reeves, Vice President of Studio Operations for Universal Music Group (who had been monitoring Plaintiff's domain name in hopes of such an opportunity), immediately moved to secure the *East Iris Studios* domains for Defendant with actual knowledge that Plaintiff, not Defendant, had the exclusive right to use the *East Iris Studios* Mark, which Defendant had expressly rejected purchasing as part of its 2018 acquisition of Plaintiff's property on which the original *East Iris Studio* was located.

26.     Defendant simply did not care whether it had a valid right to acquire the domain name that it took from Plaintiff for nothing.

27.     On March 27, 2020, Plaintiff wrote to Defendant objecting to the unlawful seizure of its long-held domain name. Defendant, however, ignored the letter.

28.     Instead, without any legal or factual basis, on February 14, 2021, Defendant incredibly registered for and ultimately received a federal trademark for *East Iris Studios* with the USPTO by fraudulent means as it knew it had no right to use *East Iris Studios* Mark at the time of its registration and that such rights belonged to Plaintiff. (A true and correct screenshot from [Trademark Status & Document Retrieval](#) evidencing Defendant's fraudulent trademark registration is attached as Exhibit B).

29. In conjunction with its fraudulent registration, Defendant listed its first use of the *East Iris Studios* Mark not in 2018 (when it purchased the East Iris Property), but in 2020 – relying instead on the date it stole Plaintiff's domain name for *East Iris Studios*.

30. Plaintiff has the express right to be protected in reputation and goodwill of its business, which is especially true in consideration of the fact that Defendant did not (a) pay or work for over a decade to develop the goodwill and secondary meaning it argued attached to *East Iris Studios* before the USPTO; or (b) purchase the Mark from Plaintiff in 2018.

31. Rather, Defendant clearly stole the *East Iris Studios* Mark and cannot establish that it had a "good faith" belief that Defendant was the senior user of *East Iris Studios* Mark at the time it registered for federal trademark protection.

32. Defendant now intends to utilize its fraudulently-obtained Mark as a "foundational piece" for its planned $250 million music studio and film campus in Berry Hill.

### Plaintiff's Irreparable Harm

33. As a direct and proximate result of Defendant's intentional and wrongful actions, Plaintiff has suffered irreparable harm and loss of goodwill.

34. The harm to Plaintiff's reputation is *per se* irreparable.

35. Plaintiff's harm is irreparable because it cannot be completely remedied.

36. Plaintiff's harm is irreparable because given the nature of advertising and promoting, the loss of identifiable consumers is not readily obtainable.

### III. COUNTS

### COUNT I
### UNFAIR COMPETITION/FALSE DESIGNATION OF ORIGIN OR QUALITY UNDER 15 U.S.C. § 1125

37. Plaintiff restates and incorporates Paragraphs 1-36 as though fully set forth herein.

38. Plaintiff owns the *East Iris Studios* Mark and has a direct commercial interest in the Nashville music recording and production community.

39. Plaintiff's rights to the Mark have been established by first and exclusive use in interstate commerce since 1998 through, at least, wide notoriety and a large consumer base.

40. Plaintiff is the owner of unregistered distinctive trademark rights in the Mark sufficient for a claim under 15 U.S.C. § 1125.

41. Defendant, directly and indirectly, has no right to use the Mark or distribute or sell goods or services under or in association with the Mark.

42. Defendant's use of the Mark as described above has caused, and is likely to cause, confusion, or to cause mistake, or to deceive, consumers, and misrepresents the nature, characteristics, or qualities of Defendant's products and/or services in violation of the Lanham Act, 15 U.S.C. § 1125.

43. Defendant's actions in violation of the Lanham Act, 15 U.S.C. § 1125, are and were willful and have caused Plaintiff damages. Plaintiff seeks judgment, pursuant to 15 U.S.C. § 1117, for profits resulting from Defendant's unauthorized and infringing use of the Mark, or variants thereof, similar to or likely to cause confusion with the Mark; for the damages sustained by Plaintiff; for all costs necessary to remedy the infringing uses and their effects; for prejudgment and post-judgment interest to the extent available and applicable; and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendant's intentional and fraudulent actions.

44. Pursuant to 15 U.S.C. § 1117(b), Plaintiff seeks an award of punitive and/or treble damages for at least three times the amount of Defendant's profits or Plaintiff's damages,

whichever is greater, due to the nature of Defendant's malicious, wanton, intentional, willful, and reckless conduct.

45. Pursuant to 15 U.S.C. § 1116 and equity, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendant, as well as its members, officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with the foregoing to stop the illegal conduct.

46. Pursuant to 15 U.S.C. § 1118 and equity, Plaintiff is entitled to impoundment and destruction of all infringing articles.

## COUNT II
## FRAUD ON THE TRADEMARK OFFICE UNDER 15 U.S.C. § 1120

47. Plaintiff restates and incorporates Paragraphs 1-46 as though fully set forth herein.

48. Defendant procured registration in the Trademark Office of Plaintiff's Mark by false and fraudulent representations and by false means.

49. 15 U.S.C. § 1120 provides, in relevant part as follows:

> [a]ny person who shall procure registration in the Patent and Trademark Office (PTO) of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

50. Defendant, in violation of 15 U.S.C. § 1120, intentionally and knowingly submitted and relied upon fraudulent representations and/or declarations of material fact with knowledge of such misrepresentations in support of its 2021 Trademark Registration. The fraudulent representations included, without limitation, that (a) Defendant actually owned the *East Iris Studios* Mark; and (b) Defendant began using the same in commerce in 2021.

51. In essence, Defendant sought to erase both Plaintiff and its association with the Mark in its brazen misappropriation of Plaintiff's right in and to the Mark and fraudulent

representations to the USPTO regarding Defendant's purported ownership and exclusive rights in and to the *East Iris Studios* Mark.

52. Plaintiff has been damaged by Defendant's unlawful actions in violation of 15 U.S.C. § 1120, including, without limitation, lost profits in the operation of its studio business and dilution of its Mark.

## COUNT III
## CANCELLATION OF DEFENDANT'S REGISTRATION FOR THE *EAST IRIS STUDIOS* MARK UNDER 15 U.S.C. § 1064

53. Plaintiff restates and incorporates Paragraphs 1-52 as though fully set forth herein.

54. Plaintiff is the senior user of the *East Iris Studios* Mark in Nashville, Tennessee with respect to music recording and production services.

55. Defendant intentionally refrained from purchasing the right to use Plaintiff's Mark in 2018 and tried to get Plaintiff to assign the same for free in 2019 without success.

55. Defendant, however, did not let its failure to acquire any legal or valid interest in Plaintiff's Mark dissuade Defendant from seeking to defraud the USPTO in an effort to secure a federally-registered trademark for Plaintiff's Mark.

56. Defendant's intentional misrepresentation of ownership of the Mark was designed to defraud the Trademark Office's examining attorney in order to obtain federal registration in the Mark.

57. Plaintiff has incurred damages resulting from Defendant's unlawful and fraudulent registration of Plaintiff's Mark, including lost profits, dilution of Plaintiff's Mark, and loss of associated goodwill.

58. Plaintiff requests an Order cancelling Defendant's 2021 registration of the *East Iris Studios* Mark.

## IV. REQUEST FOR RELIEF

Wherefore, Plaintiff requests the following relief:

1. Entry of judgment in favor of Plaintiff and against Defendant as applicable and set forth in each of the above Counts.

2. Entry of an Order, pursuant to 15 U.S.C. § 1064, that Defendant's 2021 registration for the *East Iris Studios* Mark is immediately cancelled.

3. An award of all damages, wrongful profits, disgorgement of wrongfully obtained benefits, and other monetary or equitable relief as set forth in each of the claims above.

5. Entry of a preliminary and permanent injunction that enjoins Defendant, its affiliates, parents, subsidiaries, members, officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with any of the foregoing, from using, copying, distributing, offering for sale, selling, registering, and displaying the *East Iris Studios* Mark, and any other thing, material, or item derived from the Mark.

7. Determination by the Court that Defendant's acts are deemed exceptional under 15 U.S.C. § 1117.

8. Entry of an award in favor of Plaintiff and against Defendant for monetary damages based on Defendant's profits, Plaintiffs' damages, exemplary damages, treble damages, punitive damages, reasonable attorneys' fees, expenses, costs, prejudgment interest, and post-judgment interest based upon all available and applicable statutes and common law.

9. Entry of an award in Plaintiff's favor that all profits obtained by Defendant through use of the Mark and any associated benefits arising from such use be disgorged.

10. Entry and award of such other and further monetary and/or equitable relief the Court deems just and proper.

## V. JURY DEMAND

Plaintiff requests trial by jury for all issues, claims, and defenses so triable.

Dated: August 8, 2025

Respectfully submitted,

*/s/ Chris L. Vlahos*
**VLAHOS LAW LLC**
Chris L. Vlahos (TN Bar No. 20318)
1030 16th Avenue S.
Suite 200
Nashville, TN 37212
Phone: 615.400.3213
chris@vlahos-law.com

*Attorney for Plaintiff B&S Music Properties, Inc.*